Good morning. May it please the Court, my name is David Dimitrick. I represent the appellant. I'd like to reserve five minutes for rebuttal and my intent is to focus primarily on two of the issues in this appeal. The first is Isuzu's argument on page 20 of its brief in which it asserts that the addendum that was part of the evidence excluded at trial did not refer to Fladeboe Volkswagen, but instead referred to Ray Fladeboe Lincoln Mercury, Inc. The document clearly states on its face that it identifies Fladeboe Volkswagen, not Ray Fladeboe Lincoln Mercury, Inc. It's that kind of interpretive alchemy of a document that raises the issue of what kind of evidence was excluded in this case. Isn't the core of the dispute here whether it is relevant to this current case, the trademark and so on, whether Isuzu unreasonably refused to approve the transfer of the franchise? That was our view. But that's the core of the The California Court of Appeals has decided that it didn't unreasonably do that. The California, or is the court referring to the state court decision recently? That's what I just said, California Court of Appeals. That is, the court did decide that. We think it did so erroneously. There's a pending petition for a hearing? Yes. It'll be decided in a few weeks? We think so. Okay. When it's decided, it will be issue preclusive in this court? It depends on how the court looks at it. Certainly, that is one way to look at it. I suppose it just denies the petition. I'm sorry, pardon me? Suppose it simply denies the petition for review, and it's the final determination of the California courts. Well, if the court is raising a res judicata or collateral estoppel issue, we've got the and the parties in the other case being different parties. And so, if the court is going to utilize either res judicata or collateral estoppel, I would like to brief that issue because I don't think that either of those doctrines would preclude a different party or bind this party from asserting its arguments on Who is the party in that case? The parties in the other case were Mr. Flattable as an individual, Flattable Automotive Group, which was another newly formed corporation in this liquidation plan, and Ray Flattable, Lincoln Mercury, Inc. Which was the entity that had the franchise originally? Correct. And so the question is, from Flattable Volkswagen's point of view, who was to become the person? In a way, that comes back to the question, then, of the pertinence. So if you're not the person to whom the Isuzu had an obligation to approve the transfer, so then how can you raise it? I mean, it's basically either you're all in this together, or you, meaning the current party, isn't the right person to be raising this issue at all, which is the issue that you're trying to turn everything on. We disagree with the court, respectfully so, because of what the Don Rose case said. And in that case, a proposed assignee of a transfer of a franchise was said to have had standing in that case to bring an action. In this case, we had Isuzu asserting against Flattable Volkswagen, the four claims that it was part of the evidence that was excluded in this case, because the very document that I started talking about, the addendum, which was attached to the proposed dealer agreement, specifically had Flattable Volkswagen as the proposed transferee on Isuzu's own proposed contracts. And does any of this evidence go to the question of whether, in fact, is your ultimate argument that there was acquiescence in the transfer? In some sense, yes, there's acquiescence and consent and knowledge. Knowledge is one thing, but what about acquiescence and consent? Certainly, acquiescence and consent are part of our arguments as well, because it stands to reason that if the president of Isuzu signed a contract that said Flattable Volkswagen on it, the subordinates who work for Isuzu, who procured all the information to place into this addendum, understood and knew that the Flattable Volkswagen had taken over operations. That's our view of the evidence. Isuzu argues differently. It says that the addendum must be construed as not referring to Flattable Volkswagen, but instead to Ray Flattable Lincoln Mercury, Inc. Well, that presents an interesting issue of fact, which under this court's decision in Obrey, specifically footnote four of that decision, those issues of conclusions might be drawn from evidence are for the jury to decide, not for the trial court to decide by excluding from that jury consideration. So footnote four in Obrey, I think, is dispositive of this very question. We would have liked to have been able to say to this jury, and back it up with the evidence that was there and inferentially drawn from the very documents that were excluded, Isuzu had knowledge about the extent and scope of the transfer that had taken place. Isuzu consented to that transfer. We weren't able to say that to a jury. And we think that if we had been able to say Isuzu knew about the transfer, had knowledge and consented, it therefore acquiesced and shouldn't be allowed to prevail on this case, both on the merits of the claims that were presented by Isuzu against the dealership, but also with regard to the damages question, because Isuzu, as we know, was allowed to present its damages case based on its theory, which it repeated throughout the trial, opening arguments, closing arguments, and through testimony. It did not know about this transfer until December 2002. But the excluded evidence suggests otherwise. And if that excluded evidence had been allowed to be presented to the jury, this jury could very well have denied Isuzu's claims or reduced them, because the monetary claim presented by Isuzu was broken down into segments. It made various payments to benefit the dealership over a course of time, and this jury could have carved that up, I suppose, in a worse case for us. But the fact remains that the totality of the excluded evidence, and particularly this addendum, which I think is the most convincing proof of both knowledge, consent, and acquiescence, the totality of the excluded evidence under OBRI was relevant. And so the relevancy part under OBRI, we think we satisfied that what I consider to be a rather minimal threshold issue on appeal to establish whether that evidence was relevant. We then move to the second part of OBRI, which is, did the appellee carry its of overcoming the presumed prejudice by the exclusion of that evidence? And on that point, Isuzu said nothing. Under OBRI, the question then just simply comes down to the relevancy question. Was this evidence relevant? It was. Could it have changed the jury's mind? We never know. We didn't get the chance. And it wasn't the trial court's function to decide those factual questions. It was the jury's function. And by excluding that evidence, the trial court usurped a constitutional right that my client had for the jury to decide those factual issues. The only other point that I wish to address in my remarks is that Isuzu also argued in its brief that these arguments were not raised at trial. Yes, they were. If the court looks at excerpts of record, page 315, this was contained in the supplemental brief filed by trial counsel for the appellant at that time. And on that page, the trial counsel specifically addressed the effects of this very addendum that I'm talking about and how the evidence was such that it was for the jury to decide. The basic problem with this addendum and with the proposed agreement from April 23rd, 2002, is that you never signed it. I agree. We didn't sign it, but I don't think that's a problem. Why? Because under the Vehicle Code section, which you rightly, I think, observed as being at the heart of our case, says in subsection, I think it's D1, that all existing circumstances are relevant to the question of approval or disapproval. And if that's the case, then And the fact, why is it relevant? Why are the grounds on which they would have given approval relevant if you didn't agree to them? In other words, the ultimate issue here is, were you operating, holding yourself out as something you weren't, i.e., a franchise dealer? And you being your client. And the fact that Isuzu said, if you agree to X, you will become a franchise dealer, doesn't seem terribly relevant to the question of whether you are a franchise dealer. It should, Your Honor, because of this reason. I'll make an extreme example, but it should illustrate the point. If Isuzu said to this dealership, instead of the conditions that it sought to impose, that what we want you to do is launder money for us as a manufacturer, my client would have justifiably said no. Okay, good. And you would then go and fight out the question of whether they had a right to do that, which is what you did. But does that give you the right to hold yourself out as something you're not, which is a franchise dealer? Well, under acquiescence law, yes. But why is there acquiescence there? I mean, there's no acquiescence. There may be an unreasonable failure to agree that you're a franchise dealer, but that's a dispute over here. Then there's another dispute. What does it allow you to do? Does it allow you to lie about whether you are a franchise dealer? No, we were roadblocked. The excluded evidence. You therefore had to go litigate the question of why you weren't a franchise dealer, but could you make believe you were one when you weren't one? We didn't get the chance to justify it. I'm sorry? We did not get the chance to justify what we did. Justify what? Our conduct in. Yeah, but what, I'm not seeing the relevance to your conduct on any theory of the you were not allowed to be a franchise dealer. The fact is you were not allowed to be a franchise dealer. If, well, I think it's getting the cart before the horse. In this case, our view of the case, our theory of the case was that a Sousa was informed fully about the arrangement that was made. But they didn't agree to it. Well, no, they'd never. No, no, no. I mean, there was no contract allowing you to operate. I agree. But the absence of a contract is irrelevant in and of itself for this reason. If we had made a contract, when you go down this avenue for a second, if we had made a contract and accepted their conditions, we wouldn't even be here. There'd be no dispute. If the question is, are the conditions sought by the manufacturer to be imposed upon this dealer reasonable, who has a justification under Section 11, 713.3. I'm going to assume they were entirely unreasonable, completely unreasonable. I mean, we know now, according to the California Court of Appeals, that wasn't true, but let's assume they were totally unreasonable. I don't understand how that informs your present case. Well, I look at it this way, though. If we could have solicited testimony from our own witnesses and from a Sousa's to the effect that a Sousa actually did know. And that's a different issue. That doesn't have anything to do with what's reasonable and isn't reasonable. I think it has everything to do with it, Your Honor. Whether, if I were to sell a car to you and I told you that my car has a problem with it, but then you asked me the question, well, in your own judgment, how do you think this car runs? How's it been performing? And I say, fine, it's serviced me well, but I told you that I had a problem and you relied upon my second statement and you bought my car and you found out that I actually had a problem. Now, if you come to court and you now say, I want to exclude Mr. Dimitrich's testimony that he told me there was a problem and you only were able to presume. But how does this unsigned agreement prove that they were acquiescing in your operating? They said if you signed this, you can operate, but how does it demonstrate that they said that if you don't sign it, you can operate? Well, I guess it comes down to what's said in that unsigned addendum. And as we showed in our brief, in the unsigned addendum, there is a reference to, I think it's in paragraph 11 thereof, a rolling, I forget the phrase right now, rolling performance of 12 months or so. Well, let's stop and think about this. Ray Flattable Lincoln Mercury used to operate the Isuzu dealership. It had been presented, this application for approval of this transfer had been presented at a time prior to April 23, 2002, when the president of Isuzu signed the document. In the business of a dissolution of a corporation such as Ray Flattable Lincoln Mercury went through, one of two things could have occurred here, just in theory, in the abstract. One being that Ray Flattable Lincoln Mercury Inc. was engaged in the affairs of winding up its business, and it was the operator of the franchise. The second is that Ray Flattable Lincoln Mercury Inc. terminated, and that somehow made an arrangement for Flattable Volkswagen to carry on these functions. And the third one is, in other words, a pure transfer. And then the third one is both of them were participating together in carrying out the functions of a contract that didn't automatically come to an end. This 1983 contract, the dealer franchise agreement, had an indefinite duration to it, which Isuzu conceded in its motion in limiting. All right, you're down to two minutes. You wanted to say five, but we'll... If I've only got two left of my minutes, I'd be excused. Thank you for your questions. Good morning, Your Honors. My name is Jim Mulcahy. I represent... Can you tell me what you think the pertinence of the California Court of Appeals decision is? Oh, you're right on track, Your Honor. Let me try to... I was going to start by addressing your question. There's two things that puts this in perspective. And we have not alluded to, but I think that in the course of the discussion that has we have brought them out. But let me highlight them. One, Flatabow Volkswagen was offered this dealer agreement in April of 2002, and it had conditions that apparently Flatabow Volkswagen didn't want to agree to. And so it did not. There was never any agreement. They refused to sign it. Point number two, Your Honor, what happened is this dealer operated until about September or October, Flatabow Volkswagen, under the radar, without the knowledge of Isuzu, using Isuzu's trademarks. If that's your argument, it seems to me that the April documents are some evidence of knowledge. I thought you were going to tell me that knowledge doesn't matter. But if knowledge matters, those documents certainly are some evidence. They were drafted by Isuzu, right? And they certainly, it seems to me, imply that they have the name of Volkswagen on it. And they imply that something is currently operating. Well, and I can address that. I was going to address the initial question that you raised earlier. You're doing it rather slowly, so now let's do this. I'll go immediately to that. My point, though, is this, they told Isuzu that they didn't want to send it to Flatabow Volkswagen. They wanted to send it to Flatabow Automotive Group. That's where the state court litigation came in because Flatabow Automotive Group sued Isuzu for failure to lawfully consent. And the court found that Isuzu, the appellate court recently decided that Isuzu was well within its right not to consent to that. You can't consent to, you can't have two dealers at the same time arguing that they should have been given the franchise. But let me go to your question, Your Honor. There, I have five points. Let me just ask you something. So does that suggest that the state litigation did not deal with the question of whether they unreasonably withheld a franchise from Flatabow Volkswagen? Flatabow, the evidence in that case is that Flatabow Volkswagen told Isuzu, we don't want it. We want you to give it, or Flatabow, Ray Flatabow said, we want you to give it to Flatabow Automotive Group. So we have a situation where they're arguing here that Flatabow Volkswagen should have been given the right to take this franchise. At the same time, they're arguing in the state case that Flatabow Volkswagen didn't even want it, and that it was Flatabow Automotive Group who was unreasonably denied consent. And they lost that. So my point is that what's missing here is, it's Ray Flatabow, Your Honor, who controlled all of these entities. Ray Flatabow, Lincoln. We're essentially saying, as to the collateral estoppel issue, that assuming that the California Supreme Court denies hearing, it seems to me that we couldn't decide the collateral estoppel issue. We'd have to probably remand to the district court to decide it. Well, that may be an issue that gets remanded if you feel that that that's how this case has to be decided. I don't believe that it does. And let me address your comments about this agreement. The district court got it right when the court said, in connection with the ruling on these cases, that the question in this case is not whether the defendant, Ray Flatabow, Lincoln, or Flatabow Volkswagen, had permission to operate as an Isuzu franchise. That that was the question. The question in this case is whether or not Flatabow Volkswagen had permission to operate as an Isuzu franchise. It never agreed to the terms that were presented to it and operated on its own without the knowledge of Isuzu. The court said the question is not if the plaintiff unreasonably withheld the transfer from Ray Flatabow, Lincoln, Mercury, because that issue isn't relevant to a dealer who is violating the trademark rights by operating without having been given the permission to do that. Okay. Did the district court ever rule on the viability of an acquiescence theory as a legal matter? This argument was never presented to the court in the district court case. On the motions in Limoney, when asked why this evidence was being introduced, the argument was that it was being introduced to show that there was a violation of the vehicle code. Unclean hands. No. Well, there were no equitable defenses, Your Honor, because the equitable defenses are not defenses to a statutory claim and or to a trademark infringement claim. And. But didn't they didn't they argue that it was relevant to unclean hands? The the they argued that they should be entitled to show that the contract that was presented, which Flatabow Volkswagen refused to sign, was a contract that violated the motor vehicle code. And the court argued that you can't or the court held that it was not relevant to the issue whether or not they were operating under these trademarks without the permission of Zuzu. They had to file their own claim if they wanted to make that argument. They never did, because the Flatabow Automotive Group people made that claim down in in the state court. But they never made the argument. They never suggested an acquiescence theory. They never asked for jury instructions on it. It was never an issue. None whatsoever, Your Honor. In fact, the the the problem, the sort of misleading nature of this appeal is this. Throughout the briefs, there is this discussion about the approval by IZUZU. And the the the so-called approval really doesn't mean that IZUZU approved or acquiesced. It means that IZUZU presented this contract to Flatabow Volkswagen. And as we explained in footnote 7 on page 22, the so-called approval that they're referring to is IZUZU's willingness to make Flatabow Volkswagen a dealer if it would sign this contract, which it never agreed to do. And so as a result, there was never any approval. The approval was the contract that they refused to sign. And what you see is. You're saying that this was all that they were operating without the knowledge of American IZUZU. That's right. That's what you're saying. And as to that issue, I still don't. If that's an issue in the case, if that matters, I don't see why these documents are not probative. OK. And let me let me say first that that argument was never made. But you keep going to it for some reason. It seems to matter to you, too. You keep saying that they were operating without the knowledge of American IZUZU. And without the permission. Yeah, but there's permission and knowledge. You keep saying that. So but I want to be clear about this. They were operating without the permission and without the knowledge of IZUZU. They never argued that they wanted to introduce this addendum into evidence for the purpose of showing knowledge. That was never an issue. That's not the issue of whether it is probative of knowledge. Is it probative of knowledge? No, it is not, Your Honor. Why isn't it? It is not. Some understanding that this is an operative entity, that it's not defunct, that there is something operating at this time. Let me answer it this way. Ray Flattable Lincoln Mercury was the authorized dealer. It had been operating under this franchise agreement since 1983. Ray Flattable Lincoln Mercury dissolved itself in March of 2002. And in February of that year, asked American IZUZU to consent to the transfer of the franchise agreement to Flattable Volkswagen. IZUZU had 60 days to respond. And on April 23rd or 27th, IZUZU presented Flattable with this dealer agreement with the addendum. And the addendum cannot, first of all, I just want to say that, number one, it contradicts the appellant's own position in this case. Because on the one hand, they're saying that IZUZU unreasonably withheld consent to transfer. And then on the other hand is saying that IZUZU knew about it and was aware of the fact that this was happening. Counsel, the way this issue seems to be developing during argument, and the court might infer that you would agree with counsel about this, the argument is that there's an interim between Flattable Lincoln Mercury under authorization selling IZUZU motor vehicles and the completion or finalization of an agreement between IZUZU and the And so the question becomes, was it in the contemplation of the parties that while this new arrangement was being negotiated, Volkswagen would continue to sell IZUZU vehicles as the successor and interest to Lincoln Mercury? Or was it the intention of the parties that all sale of IZUZU vehicles would terminate until such time as the new dealership arrangement was finalized? Counsel is saying that this evidence would somehow be probative of a mutual agreement that while the terms of the addendum were being flushed out, Volkswagen would continue to sell the IZUZU vehicles. There is not a shred of evidence in the record to support that. The evidence is overwhelming to precisely the opposite, that IZUZU was not aware of this. This argument was never made. I know it's interesting because this document is, it's a proposal is buying between IZUZU motors and Flattable Volkswagen, and then the agreement, the addendum goes on and speaks in the present tense, dealer acknowledges that it is not complying with the financial submission and agrees to begin submitting financial statements immediately. Well, if it isn't operating as Flattable Volkswagen Inc. isn't operating as Flattable IZUZU, then why is it submitting some financial statements immediately? And then it goes on and it says that it is not complying with IZUZU standard signage requirements. Dealer agrees to purchase and install signage by such and such a date. Then it goes on and says that, goes on about the 12 month scores and it agrees to bring its sales and satisfaction, service satisfaction score up to the average by September 1, 2002. That suggests that it's operating by September 1, 2002. By allowing dealer to operate with the deficiency described above, by allowing dealer to operate with the deficiency described above, dealer and IZUZU agree that IZUZU has not and is not waiving. Now, I understand that they didn't sign this, but there's certainly evidence is and understanding about what's happening on the ground. And what it evidences is what's happening with Ray Flattable Lincoln Mercury. No, it does not, because it says that it doesn't mention Ray Flattable Lincoln Mercury in here or any place. Well, what it says, what it says, Your Honor, is dealer. And if we're talking about. All right, but this is a question of probativeness and relevance. And somebody could at least take the view that I'm suggesting, could they not? Well, they could not, Your Honor, because if we're talking about the, for example, on page 20 of our brief, dealer could not refer to Flattable Volkswagen. It has to refer to Flattable Lincoln Mercury because there's a reference to the failure to which would be prior 12 months, which would mean that as of April 2002, Flattable Volkswagen would have to have been operating since at least May 2001. Yes. And in fact, what it reflects is an understanding of this is just a cosmetic change. And that's what you're really dealing with. This is something that was placed in an addendum. See, what we're doing here is all of this is completely outside the record. There was no offer of proof below. It says right here, dealership standards for addendum. And then it talks about dealer all the way through. And the only dealer I could be referring to was the dealer that the addendum applies to. Well, in point of fact, it refers to Ray Flattable Lincoln Mercury because that's the dealer that had the CSI scores for the last year that were substandard and had not been submitting financial statements. This was never signed by anyone on the other side. And what's happening is we're making a new argument on appeal, one that was never presented to the court below. That's a different issue. I mean, there you may be on firmer ground. Yes. But with regard to whether or not this is probative of the fact that and whatever it matters for, that Isuzu knew what was going on here, it seems to me it is probative of that. Now, assuming that, what else? You say, one, it was waived and two, knowledge doesn't matter? Well, I'm saying that this is not probative of knowledge on the part of Isuzu that this prior to the time when Isuzu learned this in December of 2002. All it shows is that there is a dealer agreement that is being presented to Flattable Volkswagen. And the addendum refers to a dealer who has been operating in the past. And it couldn't possibly be Flattable Volkswagen because when this is presented to Flattable Volkswagen, Isuzu was just the jury had the evidence been admitted. So the question is, why shouldn't the evidence have been admitted? The evidence shouldn't be admitted because this dealer doesn't have standing to assert this issue of reasonableness of consent if it is going ahead and operating on its own under this dealer code 04008 that had been assigned to Flattable, Ray Flattable Lincoln Mercury and deceptively taking matters into its own hands without a signed contract. And if let's assume that Isuzu knew that wouldn't give them the right to operate. But my point is counsel. Yes, Your Honor. It's undisputed that Flattable Volkswagen did not accept the offer by Isuzu. But it appears that there were negotiations going on. Isn't the state of the record consistent with the inference that Isuzu was agreeable to some Flattable operation selling Isuzu's while this negotiations were going on? No, there's no evidence to that effect. And in point of fact, it was stipulated that Isuzu and Flattable never entered into any contract and that VW was never authorized as an Isuzu dealer. And when they didn't sign this agreement. And that was stipulated? Yes, it was, Your Honor. Before the orders, I mean, the motions in limine were granted? Yes. Well, the stipulation was filed after the motions in limine were granted. I know it was the stipulation was filed before the motions in limine were granted. And the court in deciding this made very clear that from the party's moving papers, it appears that the following facts are undisputed. In 1983, American Isuzu and Ray Flattable Lincoln Mercury signed an agreement granting franchise rights to RFLM, which operated under Ray Flattable Isuzu DBA. In February 2002, Ray Flattable Lincoln Mercury applied to transfer the franchise rate from Ray Flattable Lincoln Mercury to Flattable Volkswagen. In March 2002, before receiving an approval from the plaintiff, Ray Flattable closed the RFLM business and opened the new Flattable VW business. Without plaintiff's approval, defendant began selling Isuzu vehicles as if it was a franchisee. Those were undisputed facts that were presented to the court, and no one ever tried to argue that there is this addendum. And it was never sought to be introduced into evidence for that purpose. What was it offered to us? It was offered to show that there was a violation of the motor vehicle code because the agreement had a one-year term, whereas the Ray Flattable Lincoln Mercury agreement had a longer term. And they wanted to introduce it into evidence to show that the shortening of the term in the agreement that was presented to Flattable Volkswagen was a violation of the California Motor Vehicle Code. And the court said, if that's the purpose for your desire to introduce this evidence, it is not relevant because if they violated the motor vehicle code when they presented this agreement to you, but you never signed it, then it's not relevant to the issue whether or not you took matters into your own hands, infringed Isuzu's trademarks, and there is no claim being brought by Flattable Volkswagen that they should have been, that there was a violation of the code. And the court went on to say, and this is very important, even if they had brought that, they wouldn't have standing to assert it. But the point is, this was a claim that was filed, or a lawsuit that was filed by Ray Flattable, by Isuzu for trademark infringement, and this dealer, it was undisputed, had no right to operate. Under those circumstances, it's not relevant whether Isuzu presented something that violated the motor vehicle code or not, because it was never signed. That's what they sought to introduce. The time's up. Thank you. Thank you, Your Honor. What was the argument surrounding the motion in limine with regard to this April agreement and addendum? There were three motions, in my view, motions in limine, that pertain to this agreement, as the court asked the question. I think it's the first three, numbers three, four, and five. The first motion in limine dealt with the duration question. The second motion in limine dealt with the modification issue. And the third motion in limine, which is actually number five in Isuzu's sequence of numbering, dealt with the, I'll call it the vehicle code, consent, unreasonable action aspects. Were they to show that there was a violation of the vehicle code with respect to all three of these? I'm sorry. I said, was it to show that there was a violation of the vehicle code in the proposed agreement in all three of the motions? If you're asking me, did we believe that these agreements in the addendum would constitute evidence of violations of the evidence code as to all three motions, I think so. What the district judge said with regard to the first motion in limine, you moved to, to exclude reference to VW as successor in interest. It should be denied. And you argue, the defendant argues the motion should be denied because it will present evidence that Isuzu was fully aware of and acquiesced to defendant's continuing use of the franchise. So apparently the issue was joined in that basis. Then he says the motion is denied at this time, but he can renew it. So what happened? Was it renewed? Not in the way that I think you asked the question. There's no formal renewal. Although at trial, on the second day of trial, the January 19th day of trial, page 32 of the reporter's transcript, trial counsel for the appellant asked a question of Mr. Robinson, one of Isuzu's witnesses, about its approval or its, the business that it went through in deciding to approve a flattable Volkswagen. And the court at first allowed the answer to be given, but just moments later then asked its own question in which it then sustained the objection to the evidence as violating the motion and rulings on the motions in limine. So in that context, an effort was made to introduce the evidence but blocked. My remarks in rebuttal are that the entire body of evidence that we desire to present both documentary and by testimony pertaining to those documents was relevant to the issues of knowledge, acquiescence, and consent and damages as to whether Isuzu was entitled to the full amount of damages that it offered or established by the evidence it did adduce. Under Obrey, that evidence was relevant and so the question really simply comes down to did Isuzu overcome the presumption that favors the admission of that evidence in this circuit and it didn't. We simply want the chance to tell a jury, look, whether it's on the basis of the on-the-ground remark or observation by Justice Berzon or the interim remark by Justice Singleton. We simply wanted the chance to tell the jury that there is some arrangement in which Isuzu knew what was going on and had acquiesced or consented even though a formal signed agreement wasn't signed so that the jury could have decided. In granting the motions in limine, the court denied the first two motions in limine so we're only dealing with 3, 4, 5, I believe 6 and 7. Correct. In dealing with 3, 4, and 5, the court characterized your offer as going to an unclean hands defense, not as to if there was an implied contract in the interim before adoption of an express contract. Wasn't it your obligation to jump up and say, no, no, this has nothing to do with unclean hands and everything to do with explaining the interim arrangement? I think that we did that, Your Honor, and let me retrace this for a second. Isuzu presented its motions in limine on the unclean hands defense that we asserted. It did not direct it to the other defenses that we asserted. It attempted to frame this issue as though all of our arguments on consent, acquiescence, and knowledge were somehow limited to the unclean hands defense. What Mr. Seething, if I may, Your Honor, what Mr. Seething, the trial attorney, did in the initial response and the approved supplemental response was to point out that its argument went far beyond the unclean hands defense. So I think Mr. Seething did that. I think he presented the arguments, and again, I'll ask that the court take a look at page 315 of the excerpts, because I think he deals with it very specifically because he uses instead of the word knowledge, he argues the awareness of Isuzu about these very things we talked about. Let me ask my question. The addendum and the agreement, the April documents, in what was there a specific motion in limine directed at them? I mean, how were they sitting here in the excerpts? Was there a proffer made of them or what? Because the motions in limine were kind of vague. They didn't go to particular documents, right? Well, they, I don't think the motions in limine were well drafted, but I'll tell you what, the ruling was comprehensive. All right, but how does this document sitting in our record? That's what I want to know. It sits there in two ways. Number one, it was attached as an exhibit to motion in limine number three, and as I said in our opening brief, the same document was actually attached to all five motions that we're talking about here. I just didn't include them as to all five motions on the basis of the excerpts of record and not replicating things, and I mentioned that fact, but they're all the same. That's how they got presented to the district court. All right. Thank you, counsel. Thank you very much. It's just arguably submitted. The final case of the morning is Seven Arts Pictures v. Fireworks Entertainment.
judges: Reinhardt, Berzon, Singleton